[No. 20349.  Department One.  May 10, 1927.]

JOSIAH THOMAS, *as Trustee, et al., doing business under the name and style of Universal Breakfast Foods Company, Respondent,* v. COAST CARTON COMPANY, *Appellant.*[1]

[1] SALES (123)—REMEDIES OF SELLER—RIGHT TO RETAIN PROPERTY. Where goods sold were paid for by trade acceptances which were dishonored on maturity, followed by bankruptcy of the buyer before delivery of all the goods, the seller, not having negotiated the acceptances, may retain the goods still in his possession as security for the purchase price due; since credit given for the acceptances was on the implied condition of the buyer's solvency.

[2] BANKRUPTCY (5-1)—PREFERENCES—TRANSFERS. The seller's right to retain undelivered goods until payment of the purchase price, partaking of the nature of a lien, does not give him an unlawful preference over other creditors, under the bankruptcy act, on the insolvency of the buyer.

Appeal from a judgment of the superior court for King county, Moriarty, J., entered July 26, 1926, upon findings in favor of the plaintiff, in an action for conversion, tried to the court.  Reversed.

*Stratton & Kane,* for appellant.

*Chas. E. Congleton,* for respondent.

FULLERTON, J.—On September 9, 1924, the Universal Breakfast Foods Co. was engaged in the business of manufacturing and selling cereal food products.  Two of such products it sold in cartons, under the trade names of "Meat O'Wheat" and "Meat O'Oats."  The appellant, Coast Carton Company, was engaged in the business of manufacturing cartons.  On the date above given, the breakfast foods company sent to the appellant the following order:

[1]Reported in 255 Pac. 1041.

"Coast Carton Company          Date 9/9/1924
"Ship to Universal Breakfast Foods Co. at 1018 Howell
      St.
"How Ship   Hold for delivery address on main order.
"50 M Large 'Meat O'Wheat'          (change on side
"50 M Sample  "        "                    panel copy)
      also
"50 M Large 'Meat O'Oats'
"50 M Sample  "        "

———
"200 M total for                    $1,775.00
        "022 Bleached Manilla
"Terms:    30-60 & 90 day trade acceptances.
        "Interest at 8% after 30 days.
                            "U. B. F. Co.
                            "By A. R. E. Co."

It was understood between the parties when the order
was given that the cartons were to be manufactured
by the appellant. Similar dealings had theretofore
taken place between them, and prior to sending the
order, the dimensions, styles and designs of the cartons
had been verbally agreed upon between them. On re-
ceiving the order, the appellant began the manufacture
of the cartons, and by November 24, 1924, had manu-
factured some 86,000 of the large cartons and an equal
number of the ones to be used as samples. On that
date, it billed the cartons to the foods company. The
cartons manufactured, prorated according to the price
agreed upon, amounted to the sum of $1,600, and on
December 10, 1924, the foods company gave to the ap-
pellant its trade acceptances in varying amounts and
payable at different times for that sum.

After receiving the trade acceptances, the appellant
endorsed them and deposited them to its credit with its
banking house. None of the trade acceptances was
paid at maturity or otherwise, and, as they matured,
the banking house returned them to the appellant and

charged its account with their several amounts. The appellant did not re-issue them.

Up until about February 1, 1925, the appellant delivered to the foods company such of the cartons as it desired, delivering approximately 3,500 of the large sizes, and a lesser number of the smaller ones. At this time, the foods company was in default in its payment of the acceptances, and the appellant refused to make any further deliveries. The parties thereupon entered into a new agreement, by the terms of which the appellant agreed to deliver the cartons to the foods company at such times as it desired them on the payment of twenty-five dollars per thousand; the foods company to receive the remainder of the cartons when payments at this rate equaled the original contract price. Some few thousands of the cartons were delivered under this arrangement, although but a small proportion of the whole.

On March 28, 1925, an involuntary petition in bankruptcy was filed against the foods company, pursuant to which the respondent, Josiah Thomas, was appointed trustee in bankruptcy. The appellant filed a claim with the trustee to which it attached and surrendered to the trustee the trade acceptances, and the trustee now has them in his possession. Following his appointment, the trustee made a demand on the appellant for the undelivered cartons, claiming title to them as property of the bankrupt's estate. He did not, however, pay or offer to pay the amount due on the purchase price. The appellant refused to recognize the claim, whereupon the trustee began the present action to recover their value, treating the refusal to deliver as a conversion. On the trial the evidence disclosed that the appellant had disposed of 6,600 of the cartons at a price of $165; that it had on hand 31,550 of the large size "Meat O'Wheat"

cartons, and 57,875 of the smaller size of the same brand, together with a large number of the "Meat O'Oats" brand of both sizes. The trial court found on the evidence that the appellant had converted the cartons, found that the value of the "Meat O'Wheat" cartons was $932.85, found that the "Meat O'Oats" cartons were of no value, and on July 26, 1926, entered a judgment against the appellant and in favor of the trustee in bankruptcy for the amount of the value of the "Meat O'Wheat" cartons, together with interest on the amount found due at the legal rate from May 22, 1925, the date of the trustee's demand for the property. It is from this judgment that the appeal is prosecuted.

[1] It was the theory of the trial court that title to the cartons passed from the appellant to the foods company on the delivery of the trade acceptances; that this title passed to the trustee in bankruptcy in virtue of the bankruptcy proceedings; and that, in consequence, the trustee in bankruptcy could recover the value of the cartons on the failure of the appellant to deliver them over to him on his demand. But, conceding that the title did pass by the transaction, a question which we think may be subject to doubt when considered in the light of the record, it does not follow that a judgment of recovery is a necessary result. No doubt that such would be the necessary result had the acceptances been paid, and it may be that such would be the necessary result had they been negotiated and were outstanding in the hands of third persons as present obligations of the foods company. But such is not the situation; the trade acceptances were not paid, nor are they outstanding as obligations of the foods company. In so far as the relation of the parties to the acceptances is concerned, the situation is as it

would be had there been a breach of the contract to deliver them.

It is the general rule that, where a seller has given credit for goods sold under a contract of sale sufficient to transfer the title to the goods, he does so on the implied condition that the buyer remains solvent. If, therefore, before payment, the buyer becomes insolvent or bankrupt, and the seller still retains the goods or any part of them in his custody, he may retain the possession as security for the purchase price, and cannot be compelled to deliver possession without the payment of the purchase price. 24 R. C. L. 125; 35 Cyc. 486, 490. So, in this instance, since the trustee in bankruptcy was the successor in interest of the foods company, with no greater right in the property than his bankrupt possessed, he was not entitled to its possession without a payment or tender of the purchase price, and could not, of course, charge the appellant with an unlawful conversion without such a payment or tender.

[2] But the respondent says that, to take the foregoing view of the rights of the parties, is to give the appellant an unlawful preference in violation of the provisions of the bankruptcy act. But we cannot so concede. The appellant's rights to retain the property until the payment of the contract price arose on the execution of the contract of sale. It partook of the nature of a lien. And, while it may have been, like all other liens, incapable of enforcement until a breach of the implied conditions arose, yet at that time it related back to its inception, and it is not material that the actual breach arose within the four months' period of the bankruptcy act within which preferences are forbidden.

Other questions discussed by counsel do not require special notice, as they are founded on a different view

of the legal situation than that which we here adopt.

The judgment is reversed, and the cause remanded with instructions to enter a judgment in favor of the appellant, the defendant below, to the effect that the plaintiff take nothing by his action.

MACKINTOSH, C. J., FRENCH, MAIN, and MITCHELL, JJ., concur.