[No. 20773.    *En Banc.*    March 7, 1928.]

WASHINGTON MACHINERY & SUPPLY COMPANY,
*Respondent*, v. NORTHERN TIMBER PRODUCTS
COMPANY, *Defendant*.

STATE BANK OF BUFFALO, *Respondent*, v. NORTHERN
TIMBER PRODUCTS COMPANY, *Defendant*, C. P.
BOERNER, *Appellant*, J. R. PORTERFIELD,
*Garnishee-Defendant*.[1]

[1] APPEAL (145)—PRESERVATION OF GROUNDS—EXCEPTIONS TO FIND-
INGS. In the absence of the evidence and any exceptions to
the findings of fact, the only question for review is whether
the findings support the judgment.

[2] SALES (4-1, 25, 35)—DISTINGUISHED FROM LOAN ADVANCES—CON-
STRUCTION OF CONTRACT—DELIVERY—TIME TITLE PASSES. A sale
is evidenced, passing title, rather than a contract for the
security of advances, by a contract whereby the owner of stand-
ing timber was to cut it into lumber and ties to be delivered
at a certain place to a dealer in such products, to be sold in
the dealer's own name and accounted for from time to time,
the title to pass as soon as delivered, and to be piled at the
place and credited to the owner as scaled up to seventy-five
percent of the "final shipment," where there was no provision
for interest on advances, provided for in a possible situation
(FULLERTON, HOLCOMB, FRENCH, and PARKER, JJ., dissenting).

Appeal from a judgment of the superior court for
Spokane county, Webster, J., entered January 24,
1927, upon findings in favor of the plaintiff, in an ac-
tion on contract, tried to the court. Affirmed.

*Don F. Kizer*, for appellant.
*Lund & Dodds*, for respondents.

MITCHELL, J.—Under date of January 4, 1924, the
appellant, Boerner, and the defendant, Northern Tim-

[1]Reported in 264 Pac. 992.

ber Products Company, entered into the following contract:

"This Agreement, made and entered into this 8th day of January, 1924, by and between C. P. Boerner, of Republic, Washington, hereinafter designated as party of the first part and Northern Timber Products Company, a corporation of Spokane, Wash., hereinafter designated as parties of the second part,

"WITNESSETH: That the party of the first part for and in consideration of one dollar to him in hand paid by second party, the receipt thereof is hereby acknowledged, and for the further considerations to be paid to the first party by the second party and more specifically hereinafter mentioned the said first party does hereby grant, bargain, convey and sell to the parties of the second part, their assigns forever all the timber he may produce during the life of this agreement, also for timber designated later on at which time prices will be agreed on, suitable for the purposes hereinafter contemplated, which are standing, laying and being upon the following described lands: (Description)

"It is understood that the conveyance of the legal title to the standing timber is for the purpose of securing the party of the second part for the amount above advanced to the party of the first part. Said party of the first part hereby agrees to go upon said lands and cut all the said timber from thereon, and to manufacture same into products in accordance and pursuant to the specifications herein and when so manufactured to deliver all of the said products on the landing at Republic prior to January 1st, 1925, and to load said products on cars or in workmanlike lumber piles when ordered to do so by party of the second part or further specified in this contract. Western pine to be sorted and piled separate shop from common in a workmanlike manner on a place agreed on—delivery to start at once if possible.

"*Title to said timber products shall pass to the party of the second part as soon as the same are delivered upon the landing, sidetrack or spur,* but this shall not operate to relieve the party of the first part

from payment of taxes and insurance and loading said products on cars at his own expense as provided herein unless otherwise specified in this agreement.

"And for all such material made and delivered according to the specifications and conditions herein, parties of the second part agrees to pay party of the first part the following prices: (statement of sizes, dimensions, quality and prices of lumber and ties to be delivered.)

"And it is further agreed that if the party of the second part is satisfied that the party of the first part is not getting out and delivering the said manufactured timber prior to the time herein specified according to the terms of this agreement the party of the second part may enter into and take teams, mill and outfit, cut, manufacture and deliver the same on their own account or let the contract therefor as they see fit, charging and collecting cost from the party of the first part.

"It is further agreed that any and all supplies and camp outfit of any description whatsoever, which latter means to include in addition to general camp outfit, also all sleighs, harness, mill machinery, etc., and any and all portions of logging outfit furnished by the parties of the second part and charged to the account of the party of the first part shall remain the property of the party of the second part and the title thereto shall not pass until the party of the first part has paid all indebtedness owing to parties of the second part.

"It is further agreed that parties of the second part may withhold any moneys that are due parties of the first part until evidence is furnished by party of the first part, satisfactory to parties of the second part that there are no claims against said timber stumpage or labor and may at their own option pay any of such claims and collect such money from the party of the first part."

There was a provision in the contract with reference to inspection of ties when they were loaded on cars for shipment, not material to the present case which relates to lumber and not to ties.

The contract was signed by both parties, and in the latter part of September, 1927, Boerner shipped, on the order of the Northern Timber Products Co., five cars of lumber to the Long Lake Lumber Company, of Spokane, and three cars of lumber to the Hedlund Lumber & Box Company, of the same place. He took the bills of lading in his own name, and refused to turn them over to the defendant without the payment to him of the purchase price according to the schedule of prices fixed in the contract. The defendant refused to pay the price, and the parties thereupon entered into a stipulation by which it was agreed that the lumber should be sold and the proceeds placed in the hands of a third person to be held by him until the respective rights of the parties thereto could be determined. There was realized from the sale the sum of $1,538.52.

While the money was in the hands of the third person, the respondents, Washington Machinery & Supply Company and State Bank of Buffalo, Minnesota, began separate actions against the defendant, Northern Timber Products Company, to recover upon indebtednesses due them from the defendant, the aggregate amount of which exceeded the sum received from the sale of the lumber. They severally caused writs of garnishment to issue and to be served on the person holding the money. In each of these actions, the defendant appeared and confessed the indebtedness. The appellant, Boerner, intervened in each of the actions, claimed the fund garnisheed and affirmed that the defendant had no claim of any kind upon the fund. The actions were consolidated for trial, and evidence was heard on the respective contentions of the parties. The trial court, at the conclusion of the trial, made formal findings of fact and conclusions of law. It found, in addition to the facts above recited, that

"At the time of such shipments, the intervenor, C. P. Boerner, was not indebted under said contract above mentioned in any sum whatever either to the defendant or to any one else whom the defendant would have been obligated to pay, nor has said intervenor been indebted under said contract at any time since said shipments. That said intervenor retained the bills of lading to said lumber and refused to deliver them to defendant until said lumber was paid for at the prices recited in said agreement above mentioned. That said defendant refused to pay the said intervenor for said lumber."

It further found:

"That the sum of $1,538.52 came into the hands of said J. R. Porterfield as the proceeds of such lumber. That said money was thereafter turned over to E. E. Sargent by said J. R. Porterfield and has since been held by him under the agreement above set out.

"That said lumber was delivered on the spur of the Great Northern Railway at or near Republic, Ferry County, Washington, and became under the terms of the contract, first set forth herein, the absolute property of the Northern Timber Products Company.

"That the money which the garnishee defendant, above named, is holding is money which is and was at all times the absolute property of the Northern Timber Products Company, the defendant herein, and that the intervenor, C. P. Boerner, has no right, title or interest therein.

"That said money, as the property of said Northern Timber Products Company is subject to the garnishments of the plaintiffs."

It concluded as matter of law from the findings that the plaintiffs in the actions were entitled to the fund as the fund of the defendant, and entered a judgment accordingly. The appeal is by the intervenor from the judgment so entered.

[1] Since the appellant took no exceptions to the findings of fact, and does not bring the evidence intro-

duced at the trial into this court, the only question open to him on the appeal is whether the findings support the judgment. *Architectural Decorating Co. v. Nicklason,* 66 Wash. 198, 119 Pac. 177; *Halferty v. Schmidt,* 100 Wash. 304, 170 Pac. 1018; *Smith Co. v. Hardin,* 133 Wash. 194, 233 Pac. 628.

[2]  The question whether the facts found support the judgment depends largely upon the proper interpretation of the contract; that is, whether the contract imports a sale and the passing of title to the lumber when delivered at the railroad track or spur from which it was shipped. Upon considering the whole contract, it appears reasonably certain that the appellant, the owner of standing timber, was to cut it into lumber and ties to be delivered to the defendant, a dealer in such manufactured products, to be sold by it in its own name and accounted for from time to time to the extent of the amount due the appellant, that is on an open running account. Because the contract provided for the possible situation of advancements to be made by the defendant to the appellant, the appellant's contention is that the contract was entered into as security for advancements. To us it appears unreasonable to so hold, since there is nothing in the contract that provides for as much as interest on advancements, if any, but only the return of the amount actually furnished, if any. On the contrary, upon a general view of the whole contract, it was manifestly intended that the defendant should have at least a chance to make a profit, and for that purpose it was agreed that the defendant should have title to lumber so that, in putting it on the market, it could do so as the owner. The only provision intended as security to the defendant, according to the terms of the contract, relates to "standing timber." This controversy, however, is not over standing timber but lumber that had been de-

livered, concerning which the contract said the "title shall pass" to the defendant as soon as it is delivered "upon the landing, sidetrack or spur," and immediately, as affecting the account between the parties now that title to the lumber had passed and delivery made, the contract reads, "but this shall not operate to relieve the party of the first part from payment of taxes and insurance and loading said products on cars at his own expense, etc." The appellant made no pretense of shipping this lumber of his own motion, evidently because he knew it did not belong to him, but shipped it only when he was ordered and directed to do so by the defendant, the owner. Another provision of the contract is,

"Lumber to be sawed to such thickness and lengths as party of the second part directs from time to time. Lumber in pile on landing to be scaled from time to time and credited to first party up to seventy-five per cent until final shipment."

Still further, the contract says,

"Party of the second part may withhold any moneys that are due party of the first part until evidence is furnished by party of the first part, satisfactory to party of the second part, that there are no claims against said timber stumpage or labor and may at their option pay any such claims and collect such money from party of the first part."

These provisions are all consistent with the agreement that the title to the lumber should pass to the defendant upon its being delivered at the sidetrack or spur, as the contract in so many words provided should be the case, and we do not find in the other provisions of the contract anything inconsistent with that view.

True, the court found that, at the time the lumber was shipped, the appellant was not indebted under the contract in any sum whatever to the defendant, but

that is in no way inconsistent with the passing of title to the lumber under the terms of the contract.

Our opinion is that the findings of fact support the conclusions and judgment of the trial court.

Affirmed.

MACKINTOSH, C. J., MAIN, TOLMAN, and ASKREN, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion. As the case is important to the parties immediately involved, and as the principles announced are of some importance to the business world, I feel justified in stating, as briefly as I may, the reasons for my dissent.

The record, as it is presented to us, is very meager. But it can be gathered therefrom that on January 4, 1924, the appellant, Boerner, was the owner of certain standing timber which he desired to cut and manufacture into marketable timber products. He was unable to finance the operation, and sought the aid of the defendant, Northern Timber Products Company, a concern then engaged in the business of buying and selling manufactured timber products. The result of the negotiations was the contract referred to, and quoted in part, in the majority opinion. By its terms, it will be observed, the appellant was to cut and manufacture the timber into dimension products, and deliver the products to the timber company at a designated place. The timber company, on its part, agreed to make the advances necessary to enable the work to proceed, and take the products at the place of delivery, and pay for them at prices stated in the contract. The record is silent as to what was done in the execution of the contract, but it is inferable that the timber company did make certain advances. The trial court expressly found, however, that these had all been repaid at the

time the transaction arose which gives rise to the immediate controversy. At that time the appellant owed the timber company nothing. He was then entitled to a payment in cash for the products.

The majority hold that the mere piling up of the products at the place of delivery was an actual delivery, vesting in the buyer absolute title in and right of control over the products. This, I think, is a misconstruction of the contract. That there was no actual delivery, the record conclusively shows. The appellant not only refused to deliver without the payment of the agreed purchase price, but he did not part with his possession and control of the property. All that he did was to take the property to the place of delivery and offer to deliver it on the payment of the purchase price. When payment was refused him, he retained it in his possession, and never thereafter parted with his possession until the property was, by mutual agreement, turned into money, and then he retained his hold on the money. That this was a delivery sufficient to pass title under the contract, I cannot conceive.

Nor am I able to follow the majority in their holding that the appellant was, under the contract, required to make a delivery without payment. While the contract did not expressly provide that payment should be made on delivery, yet this condition is implied in the contract. Where no time is fixed for payment, payment and delivery are immediate and concurrent acts, and the seller may refuse to deliver without payment. Our prior cases are in accord with this doctrine. In *Loewi v. Long,* 76 Wash. 480, 136 Pac. 673, we said:

"It is the rule that where the time of payment is not mentioned, then the law provides that the delivery of the article and the payment of the purchase price shall be concurrent acts."

See, also, *Adams v. Ames,* 19 Wash. 425, 53 Pac. 546; *Robinson v. Thoma,* 30 Wash. 129, 70 Pac. 240.

Such, also, as I understand it, is the rule of the Uniform Sales Act (Laws of 1925, Ex. Sess., p. 355); Rem. 1927 Sup., § 5836-1. By section 42 of that act it is provided that, unless it is otherwise agreed, delivery of the goods and payment of the purchase price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer for the price, and the buyer must be ready and willing to pay the price in exchange for possession of the goods.

But the majority seem to think that the appellant, by shipping the lumber on the order of the timber company, recognized that the title to it had passed to that company. Indeed, it is said that he did so "evidently because he knew it did not belong to him." To the general charge, it is a sufficient answer to say that the appellant did not, by that act, part with his possession of the property; he shipped it in his own name and retained possession of the bills of lading. But the clause quoted is, I think, an unjust censure on the conduct of the appellant. The dispute at that time between the parties was not over the title or over the right of possession. The timber company was not then contending that it was under no obligation to pay for the lumber at the time of delivery, but was contending that it had paid for it, while the appellant disputed the fact of payment. This is evidenced by the fact that the trial court made a specific finding on the issue, and the further fact that the parties, in their stipulation for the sale of the lumber, stipulated that the proceeds of the sale should be held by a stakeholder to await the determination of the dispute between them; a matter utterly immaterial, if the theory of the majority is tenable. I prefer, therefore, to think that the ship-

ment and sale were by agreement, and not the result of any doubts as to his rights on the part of the appellant. It follows, as of course, that if no title passed to the lumber by the act of placing it at the place of delivery, the judgment directed by the majority is wrong.

But I think it wrong on the theory that the title did pass. As I have before stated, the record conclusively shows that the appellant did not part with his possession of the lumber (until, of course, at the time of its subsequent sale), and it is likewise as conclusively shown that the timber company did not pay, and has not yet paid, the purchase price it agreed to pay for it. Under these conditions, the Uniform Sales Act again comes to the appellant's relief. By § 52 of the act, a seller of goods is defined to be an unpaid seller when the whole of the price agreed to be paid for the goods has not been paid or tendered; and by § 53, he is given a lien on the goods and the right to retain them for the price while he is in possession of them, notwithstanding the property in the goods may have passed to the seller by the contract of sale. Such, moreover, is the general rule in the absence of statute. As stated by Mr. Mechem, in his work on Sales (Vol. II, § 1474):

"It is everywhere conceded that the seller of goods which still remain in his possession, and concerning which no special agreement as to delivery or payment has been made, has, unless he has waived it, a lien upon the goods to enforce the payment of the price, and may, for that purpose, retain possession of them until the price is paid. This right, of course, implies that the title to the goods has passed to the vendee, for the seller can have no lien upon goods which still remain his own."

The right here given cannot be meaningless, and, manifestly, it can have no meaning, unless it is that the property cannot be taken away from the seller

without the payment to him of the purchase price, and the right, attaching as it does to the property itself, follows it into its substituted forms. In my opinion, therefore, since the appellant did not relinquish his hold on the property until it was sold by agreement, and since he retained his hold on the proceeds of the sale, the proceeds cannot rightfully be taken from him either by the timber company, or by its creditors, until the purchase price is paid.

There is still another principle which, in my opinion, controls the case against the conclusion of the majority. While the trial court made no finding on the question, the record as a whole shows that the timber company was insolvent at the time this particular property was ready for delivery. In fact, it was so stated in the argument at bar by counsel for the creditor respondents as a reason why they were pursuing this particular fund instead of executing on other property of their judgment debtor. It is the rule, both under the Uniform Sales Act and under the general rule of law, that, where the buyer of goods becomes insolvent before actual delivery, the seller may retain possession of them until payment or tender of the purchase price. Laws of 1925, Ex. Sess., p. 378, § 54; Rem. 1927 Sup., § 5836-54; 24 R. C. L., p. 125, par. 395; *Thomas v. Coast Carton Co.*, 143 Wash. 660, 255 Pac. 1041. So, were the other considerations I have mentioned of no avail, the appellant, under this rule, has the right to retain possession of the property until he is paid the agreed purchase price.

Again, it must be conceded that the creditors of the timber company have no higher or greater rights in the fund garnished than has the timber company itself. This being so, I cannot conceive how they are entitled to recover the entire fund. If the contest was solely between the appellant and the timber company, would

this court, or would any court, say that the appellant could not defend to the extent of the purchase price due him? Would it be said that the appellant must submit to a recovery of the entire fund and then seek to recover the amount due him in an independent action? To so say, it seems to me, is to deny the application of the usual and every-day principle of set-off. Undoubtedly, I think, were such the situation, the court would allow the amount due on the purchase price as a set-off, and allow a recovery only for the surplus remaining. Since the garnishee respondents derive their rights and all of their rights to the fund from the timber company, they should not be allowed a greater recovery.

It is my opinion, therefore, that this court should reverse and remand the case with instructions to find the amount due the appellant, direct that this amount be paid to him, and allow the garnishing creditors any sum that may remain.

HOLCOMB, FRENCH, and PARKER, JJ., concur with FULLERTON, J.